# SUPREME JUDICIAL COURT,

FOR THE

## MIDDLE DISTRICT,

## 1854.

## COUNTY OF KENNEBEC.

### PRATT *versus* LEADBETTER.

Of the construction of a will.

In determining the meaning of a *particular devise* reference may be had to the other provisions of the will.

That a devisee may have an estate of *inheritance*, it must appear to have been the intention of the testator by the *words used* in the devise, or *clearly* implied from the entire instrument.

A testator made the following devise: — " I give and bequeath unto my son O. P. the land he is now in possession of, also one-half of lot No. 5, to him during his natural life to improve, and then to his heirs after him for their sole right;" — *held*, that as the other clauses in the will furnished no evidence of an intention to give the devisee an estate of *inheritance*, he took only thereby an *estate for life*.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding.

ENTRY to recover possession of a tract of land in Leeds.

Both parties claimed title to the premises through Othniel Pratt, jr., who died in 1851, intestate. The tenant derived title from him through sundry mesne conveyances in fee simple.

The demandant was one of his children, and claimed as heir, and also had the rights by conveyances of all the heirs but one.

Evidence was introduced tending to show, that Othniel Pratt, senior, the father of Othniel Pratt, jr., was seized of the premises from 1794, to the time of his decease in 1810; that Othniel, jr., was in possession of them on April 8, 1809, and for several years before and after; that on the day last mentioned, Othniel, senior, made his will, which was duly proved, &c., in February, 1810.

The several bequests in the will were as follows:—

"1st, I give and bequeath unto my daughter Deborah Berry a lot of land in Livermore number four, during her natural life, and ten acres of the south end of said lot to her disposal and the remainder of said land to her two eldest children Ezra and Clarissa Pratt.

"2d, I give and bequeath unto my son Othniel the land he is now in possession of, also one half of the lot number five on the north side of said lot lying in Livermore, to him during his natural life to improve and then to his heirs after him for their sole rights.

"3d, I give and bequeath unto my daughter Hannah Draper and her husband during their natural life, then to her heirs, the land they now live on in the town of Livermore.

"4th, I give and bequeath unto my son Isaac the land he is now in possession of, also one half of lot number five on south side of said lot lying in Livermore, to him for his use and benefit during his natural life; then to his heirs for their sole use and right forever.

"5th, I give and bequeath unto my daughter Ruth Lane and her husband during their natural life, then to her heirs after her, lot number one, also twenty-four rods wide off of the lot number two on the west side running the whole length of said lot in Livermore.

"6th, I give and bequeath unto my daughter Sarah Moulton and her husband during their natural life, then to their

heirs after her, the land they now live on, also part of lot number two being in Livermore.

" 7th, I give and bequeath unto my son Elisha the land he is now in possession of, also lot number three and strip of twenty-four rods wide on the east side of lot number two lying in Livermore.

" 8th, It is my will and intent if there is any embarrassments on any of the aforementioned lands that the same be paid equally by each and every one of my children."

The presiding Judge instructed the jury, that by virtue of said will, Othniel Pratt, jr., took but a life estate in the land of which he was in possession when the will was made.

A verdict was returned for demandant for a portion of the premises demanded, and the defendant excepted.

*H. W. Paine,* in support of the exceptions.

When it is manifest the testator intended a fee, it will pass without words of limitation. *Cook* v. *Holmes & ux.*, 11 Mass. 528; *Baker* v. *Bridge*, 12 Pick. 27; *Godfrey* v. *Murphy*, 18 Pick. 295.

In the first article testator gives a fee to his daughter Deborah, in ten acres, without words of limitation.

In the seventh article he gives a fee to his son Elisha, in two parcels, without words of limitation.

In this article he gives a fee, because he no where disposes of the remainder.

Now in the second article, testator in devising to his son Othniel the land he was in possession of, uses the same language which he employs in his devise of a fee to Elisha.

Othniel then takes a fee as to " the land he is in possession of," unless the words subsequently employed in that article reduce the devise to a life estate or bring it within § 3, c. 60, Stat. 1792.

There is no grammatical rule which requires the two clauses to be so coupled together, that the latter shall control and limit the effect of the former.

In the 6th article the testator uses language clearly indi-

cating an intention to give only a life estate; but no where does he use words of limitation.

*Bradbury, contra.*

1. There are no words of inheritance, and nothing to indicate an intention to grant a larger estate, and the devisee took, therefore, only a life estate. 2 Jarman, 170; *Kirby* v. *Holmes*, 2 Wilson, 80.

2. The grammatical construction of the section containing the bequests to Othniel, jr., requires that the words of limitation " during his natural life" be applied to both parcels of the land devised. *Stevens* v. *Snelling*, 5 East, 87; 2 Jarman, 744.

3. The well established rule of construction that when a testator divides his will into sections numerically arranged, the words of limitation will be considered applicable to the several devises contained in that section, is decisive in this case. 1 Jarman, 436.

SHEPLEY, C. J. — The will of Othniel Pratt appears to have been drawn by a person not learned in the law and not familiar with its technical terms, and yet not so entirely ignorant of them, that he could not use appropriate language to give an estate for life, when such was the intention. There are some considerations presenting difficulties in coming to a correct and satisfactory construction. The same language precisely is not used in making different devises, when the intention appears to have been to give like estates.

The question presented is, whether Othniel Pratt, the son, took an estate for life or in fee in the land then in his possession. The devise to him is in these words.

" Secondly, I give and bequeath unto my son Othniel, the land he is now in possession of, also one half of the lot number five on north side of said lot lying in Livermore, to him during his natural life to improve and then to his heirs after him for their sole rights.",

After having made devises to each of his children he uses this language.

"Eighthly, it is my will and intent, if there is any embarrassments on any of the aforementioned lands, that the same be paid equally by each and every one of my children."

This clause would not necessarily impose any burden on a devisee. If the embarrassment were upon his own devise, it would give him relief. It may therefore be well doubted, whether it can be considered as making a charge upon a devisee. If it can be so considered, it cannot authorize a construction, that a devise of an estate expressly for life is thereby to be enlarged to a fee.

Certain rules have been established and decisions made, from some of which assistance may be obtained for a construction of the devise under consideration.

It is a fundamental rule that an intention must be disclosed, either by the words used or by clear implication from an examination of the whole of the will, to devise an estate of inheritance, or the devisee will not take such an estate. *Denn* v. *Gaskin*, Cow. 657; *Right* v. *Sidebotham*, Doug. 759; *Hay* v. *the Earl of Coventry*, 3 T. R. 83.

When there is no connection by grammatical construction or reference between the parts, and nothing declarative of a common purpose to make a similar disposition, one devise or clause cannot determine the meaning of another. Yet the whole may be examined to ascertain the meaning of the testator in the devise or clause under consideration. *Compton* v. *Compton*, 9 East, 267.

Different devises or different clauses of the same devise are not to be connected, without a discovery from the language used in the will, of an intention that they should be. *Meredith* v. *Meredith*, 10 East, 503.

"The safest course is to abide by the words, unless upon the whole will there is something amounting almost to a demonstration that the plain meaning of the words is not the meaning of the testator." *Crooke* v. *De Vandes*, 9 Ves. 197.

Mr. Viner has collected in his abridgment the result of several ancient decisions under the title Devise, Q. a.

Some of them may have a bearing upon the construction of this will.

1. I devise black acre to my daughter F and the heirs of her body begotten. Item, I devise unto my said daughter white acre.

The daughter shall have but an estate for life in white acre; for the word "Item" is not so much as the same manner.

2. If a man devise black acre to one in tail, also white acre.

The devisee shall have an estate tail in white acre also; for this is all one sentence and so the words, which make the limitation of the estate, go to both.

4. Item, I give my manor of D to my second son. Item, I give my manor of S to my said son and his heirs.

It was resolved that in the first he had an estate for life, and the "Item" seems to be a new gift to a greater preferment.

8. I devise black acre to J S. Item, I devise white acre to J S and his heirs.

Per COKE, C. J. — It is only an estate for life in black acre: the Item has no dependence upon the first clause, but is distinct and several.

11. A devise of white acre to J S and his heirs; and, or item, black acre.

In both these cases J S has a fee simple in black acre as well as in white acre. But if it was, I devise white acre to J S and his heirs, and Item I give black acre. Or Item, I give black acre. J S has but an estate for life in black acre.

Guided by these rules and cases and by other cases to be noticed, the conclusion must be that Othniel Pratt devised to his son Othniel an estate for life only in the lands then in his possession. For these reasons, the testator used no words of inheritance in that clause of the devise; and if it be considered as disconnected with the second clause the language gives but an estate for life.

It appears, that the testator had an impression, that it was

fit to use some language to give an estate greater than for life, when such was his intention. This is perceived in the devise to his daughter Deborah of ten acres "to her disposal." In the devise to the heirs of Othniel "for their sole rights." And in the devise to the heirs of Isaac "for their sole use and right forever."

The force of this last reason is somewhat impaired by the consideration, that in the devises to the heirs of his daughters, no other language was used than, "then to her heirs," or, "then to her heirs after her," following a devise to the daughter and her husband of an estate for life.

The language used in the devise to Othniel does not authorize a conclusion, that the testator intended to give an estate in fee in one lot and an estate for life in half of the other lot; while it does authorize a conclusion, that he intended to give the same estate in both. That both clauses constitute but one devise is perceived, because there are found no words of devise or bequest in the second clause; and it is only by its connection with the first, that they are obtained. The devise of the last estate is incomplete without a reference to, and connection with the first clause. This commends itself to the judgment as almost, if not quite, conclusive, while it receives the sanction of ancient as well as more modern authority.

It was upon a like basis, that the decisions in the cases of Viner essentially rest. In each of those cases in which a decision was made, that the devisee took a different estate by a different clause in the devise, the words of devise were found in each clause. And in each case, when the decision was, that the devisee took by each clause the same estate, the words of devise were not found in both clauses, one clause being found incomplete without reference to the other.

In the case of *Hopewell* v. *Ackland,* 1 Salk. 239, the language of the will is stated to have been in this form:

"Item. I devise my manor of Bucknall to A and his heirs.

" Item. I devise all my lands, tenements and hereditaments to the said A, he paying my debts and legacies." *Et per* TREVOR, C. J. — " Item is an usual word in a will to intro- duce new distinct matter, therefore a clause thus introduced is not influenced by, nor to influence a precedent or subse- quent sentence, *unless it be of itself imperfect and insensi- ble without reference,* therefore not here where both clauses are perfect and sensible."

In the case of *Stevens* v. *Snelling,* 5 East, 87, the same rule of construction is recognized and enforced by Lord ELLENBOROUGH, who says, " then he devises to George Snell- ing and his wife the premises in Bramley, also the premises in Wonersh; these two estates, it is to be observed, are dis- posed of in the same continuing and entire sentence; for the words " I give and bequeath" are not repeated, and must necessarily therefore extend to the subsequent part of the sentence in order to make it intelligible."

In the case of *Doe* v. *Westley,* 4 B. & C. 667, the devise appears in this form. Item. I give and bequeath unto Mary Westley all that messuage or tenement whereon I now dwell, with the garden and all the appurtenances thereto belong- ing; and I also give to the said Mary Westley all my house- hold goods and chattels and implements of household within doors and without, all for her own disposing, free will and pleasure immediately after my decease.

The devising words having been used in each clause of the devise, making each complete in itself, the decision was that the clauses were distinct, and that she took only an estate for life in the messuage.

In the case of *Fenny* v. *Ewestace,* 4 M. & S. 58, the devising words were repeated in each clause of the devise. The first clause contained words of inheritance, and the sec- ond did. They were held to constitute but one devise; and the case, for other reasons stated in the case of *Doe* v. *West- ley,* was not regarded as opposed to this rule of construction.

Another reason of less importance is, that the clauses of devise to Othniel are connected by the word "also." A

word not indicative of a separation and independence of the two clauses, but of their connection.

This construction is authorized by the second of Viner's cases, and by the remarks of Justices GROSE and LAWRENCE, in the case of *Stevens* v. *Snelling.*

A further reason for this construction of the devise to Othniel is found in the forms of other devises in that will. The testator devises to his daughter Ruth Lane and her husband " during their natural life, then to her heirs after her, lot number one; also twenty-four rods wide off the lot number two, on the west side running the whole length of the lot in Livermore." The word " also" being here used in the sense of " and." In the devise to his son Elisha, the two clauses of devise are connected by the same word " also," used in the same sense, and without any words of devise in the second clause.

Upon an examination of the whole of the will, no language is found indicative of an intention to give to his son Othniel an estate of inheritance.

Upon the construction of this will there have been, it is said, different opinions and doubts among members of the profession for thirty years. If it be so, it may not have been wholly without a precedent; for Lord ELDEN commences his opinion in the case of the *Earl of Radnor* v. *Shafto,* 11 Ves. 453, with the remark : " Having had doubts upon this will for twenty years, there can be no use in taking more time to consider it."

With the best light to be obtained by a more limited consideration and examination, the Court has come to a very satisfactory conclusion respecting the correct construction of the devise to Othniel Pratt.        *Exceptions overruled.*

TENNEY and APPLETON, J. J., concurred.